JAFFE v OAKLAND COUNTY CLERK

Docket Nos. 77-3972, 77-5250. Submitted June 9, 1978, at Lansing.—
Decided November 28, 1978.

Lillian Jaffe and other council members of the City of Southfield
filed a petition in Oakland Circuit Court seeking injunctive and
declaratory relief which would prevent the setting of a date for
a special election that could result in their recall from office as
members of the Southfield City Council. Southfield Homeown-
ers Action Committee was allowed to intervene. William J.
Beer, J., ruled that the Southfield City Clerk had failed to
follow the mandates of the Michigan Election Law in checking
and verifying voter signatures on the recall petitions and set
aside a special election scheduled by the Oakland County
Scheduling Committee. The city clerk, and Southfield Home-
owner's Action Committee appeal. The question presented is
whether the city clerk was required to make a signature to
signature comparison between the names on the recall petition
and the signatures on the signed voter registration cards filed
in the clerk's office. *Held:*

The city clerk was not required to make a signature to
signature comparison when checking recall petitions; compari-
son of petition signatures with computer print-out lists was
sufficient.

Reversed.

ELECTIONS—MICHIGAN ELECTION LAW—RECALL PETITIONS—COMPARI-
SON OF SIGNATURES—REGISTRATION CARDS—PRINT-OUT LISTS—
STATUTES.

The Michigan Election Law does not require the clerk of a
governmental unit to compare each signature on a recall
petition with the signature appearing on the signed voter
registration card filed in the clerk's office; a sufficient check and
verification of the names on a recall petition is made where the
clerk compares the names on the petition with the information
contained in computer print-out lists of voters (MCL 168.961;
MSA 6.1961).

REFERENCE FOR POINTS IN HEADNOTE
26 Am Jur 2d, Elections § 237.

*Downs & Pirich,* for plaintiffs.

*Sigmund A. Beras,* Southfield City Attorney, for County Clerk Pat Flannery.

Before: ALLEN, P.J., and CYNAR and D. R. FREE-MAN,* JJ.

ALLEN, P.J. Does § 961 of 1976 PA 66, MCL 168.961; MSA 6.1961, an act amending the removal and recall of public officials provisions of the Michigan Election Law[1] require the clerk of the governmental unit whose elected officials' recall is sought, to compare each signature on the recall petitions with the signature appearing on the registration card, or is it sufficient if comparison be made with the names on voter print-out lists on file in the clerk's office? The trial court ruled that comparison with the signatures on the original registration cards was required, and entered an order staying the recall election of plaintiff council members. From this order the defendant city clerk appeals. We reverse.

On July 25, 1977, recall petitions containing some 35,000 signatures for the recall of plaintiffs, members of the Southfield City Council, were submitted to defendant city clerk. Upon submission, each signature was checked against an IBM print-out which showed the voter number, name, address, precinct number, date of birth, and date last voted of each registered elector. The print-out did not contain the signature of the elector. Only if the signature on the petition was illegible was the original signature card checked. As the signatures

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Removal and recall is covered in §§ 951–976 of the Michigan Election Law, 1954 PA 116. In 1976, the Legislature made major changes in these sections upon enacting 1976 PA 66. *See* MCL 168.951 *et seq.;* MSA 6.1951 *et seq.*

were checked against the print-out, a notation was made on the print-out so that duplicate signatures could be eliminated. Eight of the clerk's office staff, augmented by six to eight people from other offices, working overtime each night until 9 or 10 p.m., completed the task in 14 days. According to defendant city clerk it would not have been possible to check each signature against the original signature within the 15-day period allowed by the statute but would have taken twice as long.

Upon completion of the task, the clerk attached a certificate on a form approved by the Secretary of State showing the number of signers on each petition who were registered voters, and the petitions were then filed with the Oakland County Clerk who in turn submitted them to the Oakland County Elections Director who, after counting the signatures as verified by the city clerk, certified the petitions to the Oakland County Scheduling Committee to propose a date for a special election. On August 12, 1977, plaintiffs filed in circuit court a petition for injunctive and declaratory relief. Following an evidentiary hearing at which testimony was given by election officials, the trial court ruled that the city clerk had failed to follow the mandates of the statute[2] and set aside the election

[2] "In trying to ascertain the legislative intent I observe that when the legislature was considering this matter under House Bill 5039 that the word 'checked' was then changed to the word 'compare' so I want Mr. Downs and all counsel, you, Mr. Hays, Mr. Beras, to know that I have examined that, too. * * * My interpretation of the word 'compare' means to examine in order to discover like or unlike characteristics. The statute as amended now requires a comparison and no matter how difficult the task might have been, that is the mandate of the legislature. It no longer means to take the recall petitions and with their signatures and lay them alongside of a print-out on registration lists. The best definition I can find in the law about signature itself, 'signature means a person's name as written down or set down by himself'. Therefore it becomes and must be the ruling of this Court that the recall petitions could not be used as a basis for setting up the election date until the comparison is actually

which was scheduled for September 27, 1977. An amended final order to this effect was entered September 26, 1977. From that order, defendant city clerk appeals to this Court.

Section 961 as it appeared prior to amendment is set forth below:

"Sec. 961. Whenever petitions signed as provided in sections 954, 955 or 956 of this act are filed against any officer, the official with whom such petitions are filed shall immediately cause the same to be checked with the registration lists to ascertain whether the signatures to said petitions are those of registered electors as stated therein and, if the official with whom such petitions are filed is not the custodian of the registration lists, then he shall have access to said lists for the purpose of making such check. Provided, That if the electoral district of the officers sought to be recalled is constituted of more than 1 city or township, then before such petitions are filed there shall be attached to the same the certificates of the clerks of the several cities and townships showing that the signers to said petitions are registered and qualified electors of the respective cities and townships. The clerk of each city and township before attaching such certificate shall have authority to strike out the names of all persons who are not registered electors of the city or township."

As amended, § 961 reads as follows:

"Before a recall petition is filed the petition shall be submitted to the clerk of the governmental unit appearing the heading of the petition. The clerk shall compare the signatures of the petition with the registration records on file in his office and shall within 15 days after receipt of the petition attach to the petition a

made with the written signatures on the registration lists, cards, indexes. So having held the evidentiary hearing this Court now grants a preliminary injunction and temporary restraining order against the certification of the adequacy of the petitions, and the recall elections scheduled for September 27, 1977 is cancelled."

certificate showing the numbers of signers on each petition sheet who are registered electors of the governmental unit. The certificate shall be on a form approved by the secretary of state."

The substitution of the word "compare" for the word "check" makes our decision difficult and close. Certainly the change in words provided a rational basis for the decision of the court below. Nevertheless, we do not agree. Five reasons support our conclusion.

*First,* in the absence of clear and specific language, a major change in policy may not be read into the statute. *Roberts v IXL Glass Corp,* 259 Mich 644, 648; 244 NW 188 (1932). It has long been recognized that handwriting similarity is so much a matter of opinion and so indefinite that generally it may not be acted upon in canvassing petitions. *Thompson v Secretary of State,* 192 Mich 512, 527; 159 NW 65 (1916). Thus, signatures appearing on petitions filed with the Secretary of State for initiative and referendum are presumed valid, and the burden is on the protestant to establish their invalidity by clear, convincing and competent evidence. In *Karwick v Grajewski,* 253 Mich 110; 234 NW 168 (1931), a case involving the sufficiency of signatures to petitions for the recall of the mayor of Hamtramck, the Court held that the city clerk was not to act as a handwriting expert. It is common knowledge that signatures change with age or illness. Penmanship when first registering is often different from a signature in later life. Handwriting hastily affixed to a petition at a shopping center or while standing on a street corner differs materially from handwriting leisurely affixed sitting at a desk.

Despite the fact that *Thompson* involved the canvass of petitions for the initiative rather than a

recall, and *Karwick* was decided under an earlier Michigan statute which did not contain either the word "check" or "compare", the reviewing process of recall petitions never involved the comparison of handwriting. Instead, the common practice in municipalities using the registration card system only, was to check the signature on the petition with the name on the signed registration card, and in municipalities using the print-out or other systems, to check the signature on the petition with the name on the print-out list.[3] As interpreted by the trial court, the statute would materially change the well established practice. Had the Legislature intended so major a change it would have expressed such intent in the same clear and unambiguous language, *viz:* "Shall compare the signature on such application with the signature on the registration card", as appears in § 523 governing the application for ballot requirements.[4]

*Second,* the amending act substituted the word "records" for the word "lists" in the prior act. We find this change important. When the 1954 Michigan Election Law was passed, the only voting records in use or on hand were the registration cards. These are uniformly described as "registration lists" in the 1954 statute. By 1976, as noted earlier, a number of local units of government had augmented the signature card system with the print-out system. As augmented, the signature cards and the print-outs became the registration records. To us, the word "records" is more inclusive than "lists" in the limited way that word was used in the 1954 statute and clearly evidences a legislative intent to permit the use of more than

---

[3] At least nine cities were using computer print-outs in 1976. The units using such system were Midland, Flint, Saginaw, Lansing, East Lansing, Grand Rapids, Mt. Pleasant, Warren and Southfield.

[4] *See* footnote 7.

the old registration cards. The "more" includes the print-out system then in use in many municipal units of government.

*Third,* the purpose of 1976 PA 66 was to shift the recall process to a different unit of government. An analysis of House Bill 5039,[5] made just before its enactment, by the Analysis Section of the House of Representatives, House Committee on Elections, reads:

"At the present time, petitions for the recall of any elected county, township, city, village, or school official are filed with the clerk of the governmental unit involved (except that petitions for recall of the county clerk are filed with the probate judge). Some persons believe that it is extremely difficult for a clerk to deal with a recall petition for an official with whom he/she works closely. Further, it is almost impossible to convince the circulators of the petition that the certification is being handled objectively. For these reasons, some persons contend that recall petitions should be processed by a different level of government.

Nowhere in the bill analysis or in media releases following final enactment was any mention made that the bill prescribed a different canvassing methodology than had been practiced before. The absence of any reference by the analysis staff to a change in the well established practice of determining the sufficiency of petitions strongly suggests that the Legislature intended no such change.

*Fourth,* shortening the time within which the clerk is to canvass the petitions is inconsistent with the additional time required if the amendment requires a comparison of signatures. Prior to its amendment in 1976, the statute carried a 30-

---

[5] During its passage through the Legislature, 1976 PA 66 was House Bill 5039.

day deadline for completion of the petition checking process. MCL 168.963; MSA 6.1963. As amended by 1976 PA 66, the clerk was given 15 days to complete the canvassing process. Testimony taken by the trial court was convincing that double the time period is required if comparison must be made with the original registration card rather than a print-out list. It is inconceivable that the Legislature would shorten the time span if it had indeed intended to mandate the more lengthy process required under the statute as construed by the trial court.

*Fifth,* the use of computer print-out lists is approved by the Legislature. As stated earlier, many cities have placed the information appearing on the original voter registration cards onto computer print-outs. House Bill 5456, signed by the Governor on July 11, 1978,[6] recognizes the practice. Under this bill, signatures placed on an application to vote may be compared with the name on the print-out rather than with the handwriting on the original registration card. This bill indicates legislative recognition and approval of "comparing" signatures with registered names rather than with specific signatures. It would be anomalous for the Legislature to permit verification of voters against names on computer print-outs at the initial point in an election, and then require signature to signature comparison at the recall stage, a point much later in the election process.[7]

---

[6] Upon signing, House Bill 5456 became 1978 PA 338 (MCL 168.50la; MSA 6.1501[1]).

[7] The fact that House Bill 5456 was adopted after recall petitions were presented in the instant case does not change our decision. House Bill 5456 amended § 523 of the Michigan Election Law. MCL 168.523; MSA 6.1523. That section refers to the initial voting stage and, prior to amendment, stated that before a person offering to vote is handed a ballot the election official "shall compare the signature on such application with the signature on the registration card". Because § 523 was specific, legislation was necessary to change the procedure. Section 961 did *not* require signature to signature comparison.

Reversed, no costs, a public question being involved.