MR. JUSTICE WEBER
delivered the opinion of the Court.
This action arose on August 5, 1982, when plaintiffs, who are public officials of the City of Red Lodge, filed an action to enjoin defendants Tony F. Zupan, Clerk and Recorder of Carbon County, and Barbara Thormahlen, Election Administrator of Carbon County, from holding a recall election. Sixteen electors of the city of Red Lodge were allowed to intervene as defendants. A hearing was held on August 25, 1982, and the District Court entered an order on August 27, 1982, permanently enjoining the recall elections. The intervening defendant-electors appeal.
We affirm.
In the summer of 1981, the garbage contractor for the City of Red Lodge began calling the city council’s attention to violations of the city garbage ordinance by a large grocery store, Beartooth Food Farm. The violations made it difficult to pick up Food Farm’s garbage, and eventually the *431 contractor refused to make further pickups from the store.
In October, 1981, the city council contracted with James Coutts to haul Food Farm’s garbage. Coutts continued to haul the garbage three times a week until February 1982. The city council knew at all times that Coutts did not have a proper license. Coutts had suggested that the city council hire him, which would legitimize his status by making him a city employee. This proposal was not accepted by the city.
A portion of the public, which was familiar with the license requirement, became upset with the council regarding the hiring of Coutts. Eventually, Food Farm began hauling its own garbage in order to avoid further bad publicity.
Four separate recall petitions were circulated against the officials deemed most responsible for the policy, that being Mayor Ronald Kotar and Aldermen Brian Roat, James Moore, and Ted Day.
Following are the issues which dispose of this case:
1. Sufficiency of the signature verification procedure used on all recall petitions.
2. Absence of statutory headings from some of the circulation sheets in the Mayor Kotar attempted recall.
3. Percentage of signatures required in each of the aider-men’s districts.
With regard to the first issue, the same method of signature verification was used by the election administrator on all recall petitions. All of the recall petitions were delivered to the election administrator in July, 1982. Initially the administrator compared petition signatures on a random basis, under which only a portion of the signatures contained on each sheet were actually compared to the registration signatures. The election administrator certified the recall petitions on July 19, 1982. The administrator did not compare each signature with the registration signature on file until August 24, 1982. This procedure does not meet the plain requirements of section 2-16-620(1), MCA, which provides in part:
“The county clerk in each county in which such a petition *432 is signed shall compare the signatures of the electors in such county with registration signatures on file in such clerk’s office and, if satisfied the signatures are genuine, certify that fact to the officer with whom the recall petition is to be filed. . .”
In State ex rel. Palmer v. Hart (1982), 202 Mont., 655 P.2d 965, 39 St.Rep. 2277, this Court held that random verification of signatures was not sufficient and in holding that the comparison must be made in accordance with the statute stated:
“Here, the plain and unambiguous language of the statute requires the signatures on the petitions to be compared with the signatures on the voter registration cards. Cf., Jaffe v. Allen (1978), 87 Mich.App. 281, 274 N.W.2d 38, 40; Cirac v. Lander County (1979), 95 Nev. 723, 602 P.2d 1012, 1016; Cloud v. Dyess [(La.App.1965), 172 So.2d 528]. While it might be to appellants’ advantage to allow the clerk’s office the discretion to utilize the less arduous signature comparison procedure provided by statute for use in other petition processes, this Court may not do so. We must presume that the legislative body, in this case the voters of the state, knew what it was doing. Dept. of Revenue v. Burlington Northern, Inc. (1976), 169 Mont. 202, 211, 545 P.2d 1083, 1088. The District Court was correct in holding the signature comparison process here was in substantial variance with the statutory requirements and was therefore fatal to the recall petition.” Palmer, 655 P.2d at 969, 39 St.Rep. at 2281.
While the petitions eventually were verified by comparing each signature with the registration signature, that was not accomplished within 15 days of submission. More than 35 days passed before verification was completed. This was fatal to all four recall petitions. Palmer, 655 P.2d at 969, 39 St.Rep. at 2282.
Next we consider the issue of the absence of headings on a portion of the circulation sheets in the mayor’s recall petitions. A number of circulation sheets contained signatures *433 which were stapled to the initial sheet containing the heading and reasons for recall. If those signatures are eliminated, there are not sufficient signatures to constitute the 20 percent of electors’ signatures needed under the Montana Recall Act.
The form of recall petition required under section 2-16-616, MCA, is as follows in pertinent part:
“Form of recall petition. (1) The form of the recall petition shall be substantially as follows:
“WARNING
“A person who knowingly signs a name other than his own to this petition or who signs his name more than once upon a petition to recall the same officer at one election or who is not, at the time he signs this petition, a qualified elector of the state of Montana entitled to vote for the successor of the elected officer to be recalled or the successor or successors of the officer or officers who have the authority to appoint a person to the position held by the appointed officer to be recalled is punishable by a fine of no more than $500 or imprisonment in the county jail for a term not to exceed 6 months, or both, or imprisonment in the state prison for a term not to exceed 10 years, or both.
“RECALL PETITION
“. . .By his signature each signer certifies: I have personally signed this petition; I am a qualified elector of the state of Montana and (name of appropriate political subdivision); and my residence and post-office address are correctly written after my name to the best of my knowledge and belief.
“(2). . .Each separate sheet of the petition shall contain the heading and reasons for the proposed recall as prescribed above.” (underscoring added)
The argument is made that the form is not mandatory and that under section 2-16-618, MCA, “. . .if substantially followed, the petition shall be sufficient, notwithstanding clerical and merely technical errors.” We are therefore required to determine if these are clerical and merely technical er *434 rors only.
As quoted, the statute is very clear in providing that each sheet shall contain the heading and reasons for the recall. As the warning is read, it becomes apparent why that warning should be on each signature sheet. The warning advises proposed signers that if the signer is not a qualified elector, entitled to vote for the elected officer to be recalled, the signing of the petition is punishable by a fine of not more than $500, imprisonment in the county jail not to exceed 6 months, or both, or imprisonment in the state prison for a term not to exceed ten years. In view of the provisions, the requirement that the warning be on each signature sheet makes reasonable sense. In addition, in the following statement, the signer certifies that he is a qualified elector in the particular political subdivision and that his residence and post office address are correctly written. Taken together, there is a clear requirement for the inclusion of the warning and statement on each signature sheet. We therefore conclude that the omission of these matters constitutes more than clerical or technical errors. We agree with the District Court that the sheets which did not contain the required headings and reasons for recall cannot be considered, with the result that there are insufficient signatures for Mayor Kotar’s recall election.
With regard to the percentage of electors required for the individaul aldermen, there were 1,218 registered electors for the city of Red Lodge qualified to vote at the November 1981 municipal election. Section 2-16-614, MCA, provides:
“Recall petitions for elected or appointed officers of municipalities or school districts shall contain the signatures of qualified electors equalling at least 20% of the number of persons registered to vote at the preceding election for the municipality or school district.”
Twenty percent of the registered voters of Red Lodge equals 244. The petitions asking the recall of Aldermen Roat, Moore and Day contained verified signatures of 101, 121 and 100. While these signatures exceeded 20% of the *435 voters in the district of each alderman, they were less than the 20% of the registered voters for the city of Red Lodge.
The District Court held that there were an insufficient number of signatures on each alderman’s petition in that a number equal to 20% of the electors of the entire municipality must sign the petitions. We disagree.
Section 2-16-612(3) provides:
“Every person who is a qualified elector of a political subdivision of this state may sign a petition for recall of an officer of that political subdivision. However, if a political subdivision is divided into election districts, a person must be a qualified elector in the election district to be eligible to sign a petition to recall an officer elected from that election district.”
Only those Red Lodge electors living in each alderman’s district are eligible to sign a petition to recall that aider-man. Construing sections 2-16-612(3) and 2-16-614, MCA, together shows that only 20% of the qualified electors of an alderman’s district need sign a recall petition.
Affirmed.
MR. CHIEF JUSTICE HASWELL and JUSTICES HARRISON, SHEA, MORRISON and DALY concur.