*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD MCCOY, ROBYN GRAFFENIUS, WILLIAM GRAFFENIUS, and ASHLEY WHITE,

        Plaintiffs-Appellants,

and

AIMEE FOSTER,

        Plaintiff,

v

BERRIEN COUNTY CLERK,

        Defendant-Appellee,

and

BERRIEN COUNTY ADMINISTRATOR and BERRIEN COUNTY CHIEF DEPUTY CLERK AND ELECTIONS ADMINISTRATOR,

        Defendants.

FOR PUBLICATION
October 19, 2023
9:05 a.m.

No. 365187
Berrien Circuit Court
LC No. 2022-000179-AW

Before: RICK, P.J., and SHAPIRO and YATES, JJ.

YATES, J.

The recall process can rightly be described as either the most democratic or the most anti-democratic device in the toolkit of democracy. On one hand, a recall allows an electorate to replace an elected official who has engaged in misconduct or failed to carry out the will of the voters. On the other hand, a recall effectively nullifies the outcome of a recent election and destabilizes public office in a representative democracy. In this case, plaintiffs launched a recall effort aimed at two members of a local school board, but were thwarted when defendant, Berrien County Clerk Sharon

-1-

Tyler, refused to approve signatures on recall petitions and to schedule a recall election.[1] The trial court granted voluntary dismissal after denying plaintiffs' request for a writ of mandamus to direct defendant to approve the signatures. On appeal, plaintiffs argue that defendant improperly rejected petition signatures for: (1) lack of genuineness without challenge; (2) handwriting in the address field did not match that of the signature; (3) errors in the dates; (4) removing original and duplicate signatures; and (5) failing to check the box for "township" in the header. We affirm.

## I. FACTUAL BACKGROUND

This case involves an attempt to recall two school-board members of the Lakeshore Public Schools District: Jason Beckrow and Rachel Wade. Plaintiffs, Richard McCoy and Ashley White, lived in Stevensville, Michigan, and intended to run for positions on the Lakeshore school board. Plaintiffs, Robyn and William Graffenius, lived in Lincoln Township and signed recall petitions at issue in this appeal. Aimee Foster filed the recall petitions. She was named as a plaintiff in the first amended complaint, but she is not participating as an appellant.

The Berrien County Election Commission approved the language for the recall petitions on April 25, 2022. Berrien County Chief Deputy Clerk Sheila Reitz explained at an evidentiary hearing on November 1, 2022, that the petition language is valid for 180 days once it is approved. After the canvassers begin collecting signatures, "they have 60 days" to submit the petitions to the county clerk's office. Here, the petitions were submitted on August 1, 2022. The canvassers were required to collect 2,165 signatures to initiate a recall election.[2] The Beckrow petition had 2,388 signatures; the Wade petition had 2,400 signatures. Deputy Clerk Reitz conducted an initial review of the petitions, rejecting some of the signatures because they failed to meet certain requirements. After Deputy Clerk Reitz's initial review, she ensured the petitions still had more than the required number of signatures before sending them to local township clerks to check the genuineness of the signatures. The local township clerks then reviewed and returned the petitions to the clerk's office. After the review process, neither petition had enough valid signatures to require a recall election, so Deputy Clerk Reitz contacted the circulators to inform them that the number of signatures was deficient for both petitions. She also gave the circulators spreadsheets that listed all the rejected signatures and the reason for each rejection.

McCoy and another person met with Deputy Clerk Reitz. They were upset that the petitions were not successful. Deputy Clerk Reitz agreed to review the petition signatures. She discovered signatures she believed were rejected in error. After that secondary review, the Beckrow petition had a total of 2,066 signatures and the Wade petition had 2,035 signatures. Because both of those totals fell short of the threshold of 2,165 valid signatures, no recall election was scheduled.

---

[1] Additionally, plaintiffs named Berrien County Administrator Brian Dissette and Berrien County Chief Deputy Clerk and Elections Administrator Sheila Reitz as defendants, but on September 19, 2022, the parties stipulated to their dismissal from the case.

[2] According to MCL 168.955, "[t]he petitions shall be signed by registered and qualified electors equal to not less than 25% of the number of votes cast for candidates for the office of governor at the last preceding general election in the electoral district of the officer sought to be recalled."

On August 31, 2022, plaintiffs filed a complaint requesting mandamus, declaratory relief, and injunctive relief on an emergency basis. Plaintiffs contended that defendant erred by rejecting numerous signatures. The trial court declined to grant emergency relief because it concluded that an evidentiary hearing was necessary. Before the evidentiary hearing took place, defendant moved for partial summary disposition to narrow the focus of the evidentiary hearing, and the trial court granted that motion on October 27, 2022.

At the evidentiary hearing on November 1, 2022, Deputy Clerk Reitz was the only witness who testified. The trial court subsequently entered an eight-page order on November 22, 2022, in which the trial court ruled that defendant's rejection of signatures was not improper. Accordingly, the trial court denied plaintiffs' request for mandamus. After that, plaintiffs moved to voluntarily dismiss the remaining counts in the complaint that presented constitutional claims. The trial court granted that motion and dismissed the case on February 27, 2023. This appeal followed.

## II. LEGAL ANALYSIS

This appeal involves nearly every imaginable issue concerning signature challenges. First, defendant contends this Court lacks jurisdiction to entertain this appeal. Second, defendant asserts that plaintiffs failed to preserve the issues that they now present on appeal. For their part, plaintiffs contest five grounds offered by defendant for rejecting signatures. We shall address all these issues in turn.

## A. DEFENDANT'S THRESHOLD CHALLENGES

Defendant attempts to cut off analysis of the merits of plaintiffs' appeal by contending that we lack jurisdiction to hear this appeal and that plaintiffs failed to preserve the issues they are now presenting on appeal. We disagree.

## 1. APPELLATE JURISDICTION

As an initial matter, defendant contests this Court's jurisdiction over this appeal. Plaintiffs filed a claim of appeal from an order granting their motion to voluntarily dismiss Counts II and III of their amended complaint. Pursuant to MCR 7.203(A)(1), an appeal of right may be taken from "[a] final judgment or final order" as defined in MCR 7.202(6). Under MCR 7.202(6)(a)(*i*), a final judgment or final order is "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties[.]" Defendant argues that this order was not a final order under MCR 7.202(6)(a)(*i*). Rather, defendant asserts that the order denying the writ of mandamus on November 22, 2022, was the final order disposing of all the parties' claims, and plaintiffs did not appeal that order within 21 days, so this Court does not have jurisdiction as an appeal of right. See MCR 7.204(A)(1).

The trial court's order denying mandamus did not specify the counts in the complaint that it resolved. It simply denied plaintiffs' request for a writ of mandamus. Although not dispositive, the order did not specify that it was a final order that closed the case under MCR 2.602(A)(3). See, e.g., *Faircloth v Family Indep Agency*, 232 Mich App 231, 401; 591 NW2d 314 (1998) (stating "[m]ere certification, however, does not resolve whether an order is actually 'final' "). Moreover, Counts II and III of the amended complaint involved claims under the Michigan Constitution of 1963. Neither defendant's motion for partial summary disposition, nor the evidentiary hearing,

nor the mandamus order addressed constitutional claims or provisions. Instead, the summary disposition motion and the mandamus order determined that defendant had the authority to review signatures pursuant to statute. As a result, the order denying mandamus did not dispose of all the claims in the complaint, so it was not a final order appealable by right under MCR 7.202(6). Thus, the order dismissing Counts II and III was a final order, so we have jurisdiction over this appeal of right.

## 2. PRESERVATION OF ISSUES

Defendant asserts that plaintiffs failed to preserve the issues that they seek to advance on appeal. "In general, an issue must have been raised in or decided by the trial court to be preserved for appeal." *Stegall v Res Tech Corp (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 341197); slip op at 5. In the trial court, plaintiffs claimed that defendant was prohibited from rejecting signatures on the same grounds that the plaintiffs now raise in this appeal. The trial court issued an express ruling on at least four of those grounds and denied the request for mandamus. Therefore, the claims are preserved for purposes of this appeal. See *Glasker-Davis v Auvenshire*, 333 Mich App 222, 227; 964 NW2d 809 (2020) (issues that are undecided by the trial court are not unpreserved for appeal). To the extent that defendant insists plaintiffs failed to raise specific arguments and legal authority in the trial court, "so long as the issue itself is not novel, a party is generally free to make more sophisticated or fully developed argument on appeal than was made in the trial court." *Id*. at 228. Indeed, "issue preservation requirements only impose a general prohibition against raising an issue for the first time on appeal." *Id*. at 227. Accordingly, we must address plaintiffs' arguments on the merits.

## B. PLAINTIFFS' ISSUES ON APPEAL

Plaintiffs accurately assert that defendant rejected petition signatures for a host of reasons. Plaintiffs claim that defendant's actions violated her clear legal duty, so the trial court erred when it refused to issue a writ of mandamus directing defendant to approve the signatures at issue. We review de novo, as a question of law, whether a defendant had a clear legal duty to perform and whether a plaintiff has a clear legal right to performance of any such duty. *Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016). But "because mandamus is a 'discretionary writ,' " we review the trial court's decision whether to grant mandamus relief for an abuse of discretion. *Id*. (citation omitted). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Ronnisch Constr Group, Inc v Lofts On the Nine*, *LLC*, 306 Mich App 203, 208; 854 NW2d 744 (2014). Moreover, "[t]his Court reviews de novo a trial court's decision on a motion for summary disposition." *Gorman v Am Honda Motor Co*, 203 Mich App 113, 115; 839 NW2d 223 (2013).

Under MCR 2.116(C)(8), a trial court may award summary disposition when an opposing party has failed to state a claim on which relief can be granted. *Id*. at 131. Accordingly, a motion under MCR 2.116(C)(8) "tests the legal sufficiency of a claim." *Id*. "The motion may not be supported or opposed with affidavits, admissions, or other documentary evidence, and must be decided on the basis of the pleadings alone." *Id*. "The trial court reviewing the motion must accept as true all factual allegations supporting the claim, and any reasonable inferences or conclusions that might be drawn from those facts." *Id*. The court may grant a motion for summary disposition

-4-

under MCR 2.116(C)(8) "only when a claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. at 131-132.

We review every question of statutory interpretation de novo. *Aroma Wine & Equip Inc v Columbian Dist Servs, Inc*, 497 Mich 337, 345; 497 Mich 337 (2015). When interpreting a statute, "we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature." *Id*. (quotation marks omitted). Thus, "[t]he language of the statute is the most reliable evidence of that intent, and we enforce the clear and unambiguous language of the statute as written." *Id*. at 345-346. Also, "[e]ffect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory." *Id*. at 346 (quotation marks omitted). With these principles in mind, we must take up all five of plaintiffs' challenges to defendant's rejection of signatures.

### 1. GENUINENESS OF SIGNATURES

Plaintiffs accuse defendant of impermissibly reviewing signatures for genuineness despite the lack of challenges to the signatures on that basis. According to MCL 168.961a(2), "[a]n officer whose recall is sought" can challenge "the validity and genuineness of the signature of a circulator or person signing the recall petition." To do so, "[a] challenge shall be in writing" and it "shall be delivered to the filing official within 30 days after the filing of the petitions." MCL 168.961a(2). Here, because the two school-board members subject to the recall petitions did not challenge any signatures for genuineness, plaintiffs insist that defendant had no authority to conduct a review for genuineness.

But to say that defendant's actions appeared contrary to some statute does not necessarily mean that an extraordinary writ of mandamus must issue. In order to obtain a writ of mandamus, "the plaintiff must show that (1) the plaintiff has a clear, legal right to performance of the specific duty sought, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial, and (4) no other adequate legal or equitable remedy exists that might achieve the same result." *Berry*, 316 Mich App at 41. "[A] clear, legal right is one clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided." *Id*. " 'A ministerial act is one in which the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.' " *Id*. at 42 (quotation marks and citation omitted). Here, plaintiffs do not even have the law right because their argument fails to consider separate statutes, including MCL 168.961, that define the "duties" of defendant in dealing with recall petitions.

This case concerns the attempted recall of two school-board members. Recall petitions are addressed by MCL 168.951 *et seq.* According to MCL 168.951(1), "[e]ach elective officer, except a judicial officer, is subject to recall by the voters of the electoral district in which the officer is elected . . . ." "A petition demanding the recall of an elective county commissioner or township, city, village, or school official shall be filed with the county clerk of the county in which the largest portion of the registered voters in the electoral district reside." MCL 168.960(1). Then, "[w]ithin 7 days after a recall petition is filed, the filing official with whom the recall petition was filed shall examine the recall petition" and "shall determine if the recall petition is in proper form and shall determine the number of signatures of the recall petition." MCL 168.961(2). "In determining the

-5-

number of signatures, the filing official shall not count signatures on a recall petition sheet if 1 or more" specific concerns exist. *Id.*

After that initial review, if the filing official decides that the number of signatures exceeds the minimum number required to proceed with a recall election, "the filing official shall determine the validity of the signatures by verifying the registration of signers under subsection (6) and *may* determine the genuineness of signatures under subsection (7) or shall forward each recall petition sheet to the clerk of the city or township appearing on the head of the recall petition sheet." MCL 168.961(4) (emphasis added). Pursuant to MCL 168.961(6): "The qualified voter file shall be used to determine the validity of recall petition signatures by verifying the registration of signers." And, more to the point in this case, MCL 168.961(7) states that "[t]he qualified voter file shall be used to determine the genuineness of a challenged petition signature appearing on a recall petition. Signature comparisons shall be made with the digitized signature in the qualified voter file. If the qualified voter file does not contain a digitized signature of an elector, the official with whom the recall petition was filed shall compare the challenged signature to the signature on the master card."

In *Jaffe v Oakland Co Clerk*, 87 Mich App 281, 282; 274 NW2d 38 (1978), we reversed the trial court's ruling that a clerk was required to compare each signature on a recall petition with the signature on the voter registration card. In that case, the clerk compared the signatures on the recall petition with the names on a printed list of voters on file in the clerk's office to determine whether the signers were registered voters. *Id.* at 283. The plaintiffs requested injunctive and declaratory relief, claiming that the defendant clerk failed to follow the mandates of MCL 168.961 by not comparing each signature on the petition with the signature on the voter registration card. *Id.* The trial court agreed and set aside the recall election. *Id.* at 283-284.

At the time this Court issued its decision in *Jaffe*, MCL 168.961 provided:

> Before a recall petition is filed the petition shall be submitted to the clerk of the governmental unit appearing the heading of the petition. The clerk shall compare the signatures of the petition with the registration records on file in his office and shall within 15 days after receipt of the petition attach to the petition a certificate showing the numbers of signers on each petition sheet who are registered electors of the governmental unit. The certificate shall be on a form approved by the secretary of state. [*Jaffe*, 87 Mich App at 284-285.]

This Court held that a comparison of every signature on a petition with the signature in the voter file was not required of the clerk. This Court explained that "signatures appearing on petitions filed with the Secretary of State for initiative and referendum are presumed valid, and the burden is on the protestant to establish their invalidity by clear, convincing and competent evidence." *Id.* at 285. This Court observed that "[i]t has long been recognized that handwriting similarity is so much a matter of opinion and so indefinite that generally it may not be acted upon in canvassing petitions." *Id.* This Court noted that signatures change with age or illness. *Id.* In fact, this Court posited that "[h]andwriting hastily affixed to a petition at a shopping center or while standing on a street corner differs materially from handwriting leisurely affixed sitting at a desk." *Id.*

Although *Jaffe* held that the comparison of signatures was not mandatory, it did not hold that such comparisons were prohibited. See *id.* at 282 (stating that the original signature card was

checked if the signature on the petition was illegible). Indeed, MCL 168.961(4) currently provides that "the filing official shall determine the validity of the signatures by verifying the registration of signers . . . and may determine the genuineness of signatures . . . ." The plain language of MCL 168.961(4) allows a clerk to compare a signature on a recall petition with the signature in the voter file regardless of whether a challenge is made. No language in that subsection requires a challenge before a clerk may compare signatures. MCL 168.961(4) simply states that the filing official "*may* determine the genuineness of signatures*" under MCL 168.961(7) by comparing the signature with the qualified voter file. (Emphasis added.) As a result, under the plain language of MCL 168.961, a clerk has the discretion to check the genuineness of a signature without a challenge. Therefore, defendant was permitted to check the genuineness of signatures that had not been challenged.

Plaintiffs insist the presence of the term "challenged petition signature" in MCL 168.961(7) means that a challenge is necessary before the clerk is permitted to compare signatures on a recall petition with the signatures in the qualified voter file. We do not believe that the word "challenge" in MCL 168.961(7) is so significant because there is no mention of the word "challenge" in MCL 168.961(4) and MCL 168.961a expressly requires the clerk to determine genuineness in the event of a challenge. In other words, if plaintiffs' position were correct, then there would be no reason for the latter portion of MCL 168.961(4) or the entirety of MCL 168.961(7) because challenges are specifically addressed by MCL 168.961a. See *Aroma Wines & Equip*, 497 Mich at 346. Thus, because defendant was allowed to check the genuineness of signatures without a challenge, there existed no clear legal duty for defendant to count the signatures that had been rejected for lack of genuineness. Therefore, the trial court properly granted defendant's motion for partial summary disposition on this basis and properly denied plaintiff's request for mandamus. See *Berry*, 316 Mich App at 41.

## 2. ADDRESS AFFIXED BY SIGNER

Plaintiffs next argue that a clerk may not reject an otherwise-valid signature simply because the signer did not personally provide an address on the petition. According to MCL 168.954(1), which addresses signatures on recall petitions,

> A recall petition must be signed by registered and qualified electors of the electoral district of the official whose recall is sought. Each signer of a recall petition *shall affix his or her signature, address, and the date of signing*. An individual who signs a recall petition must be a registered and qualified elector of the governmental subdivision designated in the heading of the petition. [Emphasis added.]

In *Schmidt v Genesee Co Clerk*, 127 Mich App 694, 701; 339 NW2d 526 (1983), we explained that the language chosen by the Legislature in MCL 168.954 "clearly and unambiguously requires the signer of the petition to affix the date of signing personally." Accordingly, this Court affirmed the rejection of signatures for which the signers did not provide the date. *Id*. at 703. This Court observed that the requirement that the date be written by the signer "directly eliminate[d] serious potential for fraud." *Id*. On the other hand, this Court ruled that if the post office portion of the address was filled in by someone other than the signer, it still complied with MCL 168.954. *Id*.

The language of MCL 168.954(1) establishes that a signer of a recall petition must provide an address for the signature to be valid. Because signatures for which the signer did not personally write an address were invalid according to MCL 168.954(1), defendant had no duty to count those signatures. Therefore, the trial court properly granted partial summary disposition and denied the request for mandamus on that basis. See *Berry*, 316 Mich App at 41,

## 3. DATES

Plaintiffs contend that defendant was not permitted to reject signatures based on purported irregularities in the date fields. MCL 168.961(2) identifies instances in which a filing official must reject a signature on a recall petition. According to MCL 168.961(2)(d), which addresses the date on which the petition was signed, rejection by the filing official is mandatory if "[t]he signature was obtained before the date of determination as provided under [MCL 168.951a(8)] by the board of state canvassers or the Michigan court of appeals, whichever occurs later, or as provided under [MCL 168.952(8)] by the board of county election commissioners or the circuit court, whichever occurs later, or more than 60 days before the filing of the recall petition." Moreover, as previously discussed, MCL 168.954(1) requires a signer to write the date on which the petition was signed.

Under MCL 168.961(2)(d), the clerk must examine the date of each signature to determine whether it was signed within the proper time frame. Accordingly, it seems reasonable for the clerk to disregard a signature if the clerk cannot determine whether the signature was written within the governing time frame because of illegibility or because the date appears to have been altered. At the evidentiary hearing, Deputy Clerk Reitz testified that she would count a signature that appeared to be changed from a date that was still within the allotted time frame. But if it appeared that the date fell outside of the governing time frame, the signature was not counted.

Although plaintiffs identify examples of dates that were rejected, they are not challenging the rejection of any particular signatures. Rather, plaintiffs are challenging defendant's authority to reject signatures on this basis. But because MCL 168.961(2)(d) requires the clerk to reject any signatures that are dated outside the proper time frame, the clerk is permitted to reject signatures that the clerk cannot verify were collected within that governing time frame. Therefore, defendant was not required to count signatures with dates that could not be properly verified. Accordingly, the trial court properly denied the request for mandamus relief on that basis. See *Berry*, 316 Mich App at 41.

## 4. DUPLICATE SIGNATURES

Plaintiffs contend that defendant was required to count the initial signature of an individual who signed the petition more than once. The requirements for a recall petition are addressed in MCL 168.951a. Specifically, MCL 168.951a(1)(a) requires that a recall petition must comply with MCL 168.544c(1) and (2). Under MCL 168.544c(1), a warning must be included on the petition in 12-point, boldface type, stating that a person who knowingly signs the petition more than once violates Michigan Election Law. Additionally, a circulator of a recall petition must certify "that he or she has neither caused nor permitted a person to sign the recall petition more than once and has no knowledge of a person signing the recall petition more than once." MCL 168.957(1)(a).

The recall petitions at issue in this appeal contained a warning in large, boldface type that stated: "A PERSON WHO KNOWINGLY SIGNS A RECALL PETITION MORE THAN ONCE OR SIGNS A NAME OTHER THAN HIS OR HER OWN IS VIOLATING THE PROVISIONS OF THE MICHIGAN ELECTION LAW." Similarly, the circulator certificate bore a statement asserting that the circulator "has neither caused nor permitted a person to sign the petition more than once and has no knowledge of a person signing the petition more than once."

In any event, there is no dispute that duplicate signatures on a recall petition are invalid. Rather, the dispute focuses on whether the original signature should also be rejected. The relevant statutes do not specifically address this issue. In *Mich State Dental Society v Secretary of State*, 294 Mich 503, 514; 293 NW 865 (1940), the Michigan Supreme Court explained that "signatures appearing twice or more upon the same or several sections of a petition should be rejected." The practice of excluding the signatures of any person who signed a petition more than once was briefly analyzed by the United States Court of Appeals for the Sixth Circuit in *Taxpayers United for Assess Cuts v Austin*, 994 F2d 291 (CA 6, 1993).[3] There, the Sixth Circuit explained:

> Plaintiffs next contend that the practice in Michigan of excluding the signatures of any person who has signed the petition twice is irrational. In this case, 5,000 persons signed twice. The Board excluded both the first signature, and the subsequent duplicative signature. Excluding these signatures, however, is rationally related to Michigan's interest in protecting against fraud in its initiative system. [*Id*. at 299.]

The Sixth Circuit addressed the claim that Michigan's procedures concerning initiative petitions violated the plaintiffs' First Amendment rights to free speech and political association, *id*. at 296-297, rejecting that theory and stating that "the state may constitutionally place nondiscriminatory, content-neutral limitations on the plaintiffs' ability to initiate legislation." *Id*. at 297. Beyond that, the Sixth Circuit observed that the procedures did not restrict the means the plaintiffs could use to advocate their proposal or limit speech on the basis of content. *Id*.

In *Doe v Reed*, 561 US 186, 198; 130 S Ct 2811; 177 L Ed 2d 493 (2010), the United States Supreme Court explained that "the State's interest in preserving electoral integrity is not limited to combating fraud. That interest extends to efforts to ferret out invalid signatures caused not by fraud but by simple mistake, such as duplicate signatures or signatures of individuals who are not registered to vote in the State." The Supreme Court noted that states have "significant flexibility in implementing their own voting systems." *Id*. at 195. Additionally, "[t]o the extent a regulation concerns the legal effect of a particular activity in that process, the government will be afforded substantial latitude to enforce that regulation." *Id*. at 195-196.

Here, defendant was allowed to disqualify both the initial signature as well as the duplicate signatures on the recall petitions. To the extent that plaintiffs contend that this action resulted in a violation of First Amendment rights, the exclusion of both the initial signature and subsequent, duplicate signatures is a content-neutral, nondiscriminatory practice that is reasonably related to

---

[3] Cases from other jurisdictions are not binding precedent, but we may find them persuasive. See *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006).

Michigan's interest in protecting against fraud and mistake in the recall process. See *Taxpayers United for Assess Cuts*, 994 F2d at 297, 299. In addition, this practice does not bar a signer from signing a recall petition as long as he or she signs the petition only once, as allowed under Michigan election law. Hence, plaintiffs were not entitled to defendant's acceptance of the initial signatures, and the trial court properly denied mandamus relief on that basis. See *Berry*, 316 Mich App at 41.

## 5. CHECKBOXES

Finally, plaintiffs claim defendant erred in rejecting signatures if the "city," "township," or "village of" box was not checked at the top of the petition sheet. Even if plaintiffs are correct, the number of signatures rejected on that basis is insufficient to increase the number of valid signatures to the level necessary to require a recall election.

Under MCL 168.961(2)(b), the clerk "shall not count signatures on a recall petition sheet if . . . [t]he heading of the recall petition sheet is improperly completed." Here, plaintiffs' challenge concerns the top of the recall petition, which contains a section with three checkboxes identified as "City," "Township," and "Village of" with instructions to "check one." Deputy Clerk Reitz's affidavit explains that 12 signatures on the Beckrow petition were not counted and 11 signatures on the Wade petition were not counted because the recall petition sheet was improperly completed. Even if the signatures were counted, the Beckrow petition would have a total of 2,078 (2,066 plus 12) signatures and the Wade petition would have a total of 2,046 (2,035 plus 11) signatures. The number of signatures would still fall short of the 2,165 required for a recall election. Accordingly, plaintiffs were not entitled to have defendant schedule a recall election. Therefore, plaintiffs are not entitled to a writ of mandamus on that basis. See *Berry*, 316 Mich App at 41.

Affirmed.

/s/ Christopher P. Yates
/s/ Michelle M. Rick
/s/ Douglas B. Shapiro